UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
KATHLEEN ROSS,

        Plaintiff,

  -against-

THE CITY UNIVERSITY OF NEW YORK,
as the political entity responsible
for Queens College,

        Defendant.
--------------------------------X

**MEMORANDUM & ORDER**

15-cv-4252 (KAM)(VMS)

**MATSUMOTO, United States District Judge:**

       Plaintiff Kathleen Ross commenced this action pursuant to Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* ("Rehabilitation Act") against The City University of New York ("CUNY"), alleging that architectural barriers at Queens College hinder her ability to access services and utilize programs offered there. (ECF No. 1, Complaint ("Compl.") dated 7/21/2015.) Pending before the court is CUNY's motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted. For the following reasons, CUNY's motion is denied.

## Background

### I.  Factual Background

Plaintiff suffers from cerebral palsy, which causes her to use a walker as her primary means of mobility. (Compl. ¶ 4.)[1] Due to her disability, plaintiff is unable to walk, stand, or use her legs without assistance. (*Id.* ¶ 5.)

Plaintiff was a student at Queens College when she filed the Complaint on July 21, 2015. (*Id.* ¶ 14.) Queens College, located in Flushing, New York (*id.* ¶ 7), is a senior college in the CUNY system. *See* N.Y. Educ. Law § 6202(5) (defining "senior college" to mean "an institution of higher education in the City of New York . . . but not including community college"); *Falcon v. City Univ. of New York*, No. 15-cv-3421, 2016 WL 3920223, at *1 (E.D.N.Y. July 15, 2016) ("CUNY is the public university system of New York City. Queens College is a senior college within CUNY's network."). It is undisputed that since filing the Complaint, plaintiff has graduated from Queens College and is not presently enrolled there. (*See* ECF No. 15, Defendant's Memorandum in Support of Motion to Dismiss ("Def. Mem.") at 2; ECF No. 17, Plaintiff's Opposition to Motion to Dismiss ("Pl. Mem.") at 2.)

---

[1] Unless otherwise noted, all facts are taken from the Complaint and are accepted as true for the purposes of this motion to dismiss. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Plaintiff alleges that while attending Queens College as a student she "tried to access numerous architectural features but encountered numerous barriers which hindered her ability to access the services and utilize the programs offered" there.  (Compl. ¶ 15.)  Although she has graduated, plaintiff alleges that she resides in Queens County and, as an alumna and community member, she "plans to return to [Queens College] in the near future to utilize programs and activities administered" there.  (Compl. ¶¶ 3, 18.)

Plaintiff alleges that the "physical barriers to access" on the Queen College campus include, *inter alia*: (1) parking spaces "designated as accessible that do not have vertical signage, do not have the proper sized access aisles, [and] have access aisles that do not lead to curb cuts;" (2) ramps lacking proper handrails; (3) restrooms that have doorways that are too narrow, lack proper grab bars, have non-insulated pipes under the sinks, and have mirrors, toilet seat cover dispensers and hand dryers that are too far from the floor; (4) fire alarm pulls, wall-mounted telephones, light switches, and defibrillators that are too high off the floor; (5) vending machines that have operable parts too high off the floor; (6) "emergency kiosks" that do not contain proper clear floor space and have parts too high off the floor; (7) outdoor areas with inaccessible seating; (8) walkways between buildings with broken

and uneven sections; (9) sections of the Benjamin S. Rosenthal Library that are completely inaccessible due to stairs; (10) campus shuttle buses without lifts for the disabled; and (11) a lack of handicap accessible seating in the dining hall and student union. (Compl. ¶ 23.) Based on these alleged physical barriers to access, plaintiff contends that Queens College has discriminated against her, and continues to discriminate against her, by "excluding her from participation in, and denying her the benefits of" services, programs, and activities at Queens College. (*Id.* ¶ 28.) Plaintiff seeks a declaration that CUNY is in violation of Title II of the ADA and the Rehabilitation Act; an injunction requiring CUNY to make all "readily achievable" alterations to Queens College; and an award of compensatory damages, as well as attorneys' fees and costs. (*Id.* at pp. 12-13.)

## II. Procedural History

Plaintiff filed this lawsuit on July 21, 2015, naming as the sole defendant CUNY, "as the political entity responsible for Queens College." (ECF No. 1.) CUNY moved to dismiss the Complaint on November 23, 2015, arguing that: (1) plaintiff lacks standing to obtain injunctive or declaratory relief because she is no longer a student at Queens College and fails to allege a particularized "injury" from architectural barriers; (2) the allegations in the Complaint fail to state a claim for

4

violation of either Title II of the ADA or the Rehabilitation Act; and (3) plaintiff's ADA claim is barred by the Eleventh Amendment.  (ECF No. 12.)  Plaintiff filed an opposition memorandum (ECF No. 17), to which CUNY replied.  (ECF No. 18.)

## **Legal Standards**

### I.   **Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000).  It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure,* 290 F.3d 493, 497 (2d Cir. 2002)).  In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [the court is] not to draw inferences from the complaint favorable to plaintiff." *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir. 2004).  The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

## II.  Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Iqbal*, 556 U.S. at 678.  A complaint providing only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court may refer to "documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir 1993) (internal citations omitted).

## Discussion

## I.  Standing

Defendant first argues that plaintiff lacks standing to bring her claims because she is no longer a student at Queens

College and therefore does not face a "real or immediate" injury from the alleged architectural barriers on campus. (Def. Mem. at 5-8.) Plaintiff contends that her discriminatory treatment is ongoing because she will encounter architectural barriers when she returns to Queens College as an alumna for events and programs held on campus, and as an "ADA tester." (Pl. Mem. at 6-11.) Defendant counters that plaintiff's intentions to return to campus are too vague and uncertain to confer standing, and amount to the type of "some day" intentions the Supreme Court found insufficient to confer standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). (Def. Reply at 2.) Defendant additionally argues that even if plaintiff is found to have standing, she lacks standing "to seek an injunction for the entire 80-acre campus." (Def. Mem. at 8.)

Article III, § 2 of the Constitution limits federal jurisdiction to "Cases" and "Controversies." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.") (internal quotation marks and citations omitted)). To establish Article III standing, a plaintiff generally must show: "(1) injury in fact, which must be (a)

concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Bernstein v. City of New York*, 621 Fed. App'x 56, 57 (2d Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In ADA actions seeking injunctive relief, the Second Circuit has found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of [the accommodation] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d Cir. 2013); *see also Bernstein*, 621 Fed. App'x at 57-58 (applying test set forth in *Kreisler* to determine plaintiff's standing under Title II of the ADA).

In *Kreisler*, the Second Circuit applied these factors and found standing (and therefore an "injury in fact") where a plaintiff with cerebral palsy alleged that: (1) a wheelchair inaccessible entrance to a restaurant violated the ADA; (2) plaintiff regularly frequented restaurants in his neighborhood; (3) plaintiff lived in close proximity to the defendant's restaurant; and (4) plaintiff alleged that he would like to frequent the defendant's restaurant. *Kreisler*, 731 F.3d at 188.

8

More recently, in *Bernstein*, the Second Circuit applied these factors where the plaintiff sued the City of New York under Title II of the ADA and the Rehabilitation Act based on alleged violations preventing him, as a blind person, from "equal or reasonable" access to Central Park. 621 Fed App'x at 57-58. The court found that plaintiff met the first *Kreisler* factor – past injury under the ADA – because "plaintiff alleged concrete factual allegations in support of his claim" that defendant denied him equal or reasonable access to Central Park. *Id.* Specifically, the complaint included a list of "violative conditions" at Central Park and alleged that plaintiff personally experienced the violations as a result of his blindness. *Id.* at 58. The court held that plaintiff satisfied the second *Kreisler* factor because it was "reasonable to infer" from the complaint that the alleged violations would continue. *Id.*; *see also Kreisler*, 731 F.3d at 188 (finding second element satisfied where defendant "has not indicated an intent to remedy th[e] barrier").

Finally, with respect to the third *Kreisler* factor – intent to return to the accommodation in the future – the *Bernstein* court found that plaintiff, who lived in Michigan, did not "provide any information regarding [his] intent to return to the Park in the future," and remanded the case to the district court for further fact-finding on that issue. 621 Fed. App'x at

58-59.  In doing so, the Second Circuit explained that in ADA

cases:

> [i]ntent to return is a highly fact-sensitive
> inquiry that incorporates a range of factors
> including not only the proximity of the
> defendant's services, programs, or activities to
> the plaintiff's home and the frequency of the
> plaintiff's past visits . . . but also other
> factors relevant to the calculation of the
> plaintiff's intent to return such as occupation
> or demonstrated travel habits.

*Id.* at 59 (internal citation omitted).

Defendant argues that "federal courts generally lose

jurisdiction to adjudicate claims for declaratory or injunctive

relief asserted by a student against a school, college, or

university when the student graduates."  (Def. Mem. at 6.)

Although graduation obviously may reduce frequency of visits to

a university, a student's graduation alone does not necessarily

preclude standing to bring Title II ADA or Rehabilitation Act

claims against that university.  Such a strict rule would be

inconsistent with the Second Circuit's instruction in *Kreisler*

to evaluate an ADA and Rehabilitation Act plaintiff's "intent to

return" to the accommodation at issue.

In support of its argument that plaintiff does not

have standing as a result of her graduation from Queens College,

defendant cites inapposite cases that did not involve alleged

ongoing ADA violations under Title II and, therefore, did not

apply the *Kreisler* factors relevant to the standing analysis in

this ADA action.  The cases cited by defendant address standing to bring First Amendment claims after graduation from a university.  *See, e.g., Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 139-40 (2d Cir. 1994) (finding alumni of the State University of New York ("SUNY") at Cortland lacked standing to bring First Amendment claims challenging a SUNY regulation that prohibited commercial businesses from engaging in sales demonstrations in dorm rooms).

Applying the *Kreisler* factors here, and accepting all allegations in the Complaint as true for purposes of defendant's motion, the court finds that plaintiff has standing to pursue her claims under Title II of the ADA and the Rehabilitation Act.

First, the Complaint includes concrete allegations of past injury.  As in *Bernstein*, the Complaint alleges a series of "violative conditions" that plaintiff encountered while attempting to access Queens College.  (Compl. ¶ 23.)  Plaintiff also alleges that she personally experienced at least some of these conditions.  For example, the Complaint states that plaintiff encountered great difficulty in her attempts to use the restrooms.  (*Id.* ¶ 16.)  Plaintiff also states that certain areas of the Benjamin S. Rosenthal Library are "completely inaccessible" to plaintiff due to stairs.  (*Id.* 23.)  The campus shuttle bus is "not accessible" to plaintiff because it does not

have a "lift" to assist disabled passengers.  (*Id.*)  In winter, the maintenance crew routinely plows snow onto accessible ramps, impeding plaintiff's access to the property.  (*Id.*) Additionally, it is reasonable to infer that plaintiff personally has been denied reasonable access to the Student Union, where there is "no accessible seating," and the campus dining hall, where there is "no disabled seating" in the dining area.  (*Id.*)  These particularized instances of inaccessibility satisfy the first prong of the *Kriesler* test.

Second, there is no indication in the Complaint that Queens College intends to remedy the allegedly violative conditions.  Thus, it is reasonable to infer that those conditions will persist.  *See Kreisler*, 731 F.3d at 188 (finding second factor satisfied where defendant "has not indicated an intent to remedy th[e] barrier").

Finally, plaintiff's allegations are sufficient to establish intent to return to Queens College.  Although no longer a student there, plaintiff lives in close proximity to Queens College (i.e., in Queens County) and alleges intent to return to campus as an alumna for programs and activities (Compl. ¶¶ 21-22) and to attend public events.  (ECF No. 17-1, Affidavit of Kathleen Ross ("Ross Affidavit") dated 12/19/2015

¶¶ 6-8.)[2]  Plaintiff's allegations and sworn statements provide far more than the vague "some day" intentions to return that the Supreme Court has found insufficient to confer standing.  *See Lujan*, 504 U.S. at 564.  Indeed, plaintiff has already returned to Queens College since her graduation - for a "Thanksgiving Potluck" in November 2015 - and encountered barriers to access. (Ross Affidavit ¶ 7.)  And according to the Queens College Foundation 2015 Alumni Calendar attached to plaintiff's opposition brief (ECF No. 17-2), official alumni events (1) are held often on campus, and (2) are held regularly at the Benjamin S. Rosenthal Library, parts of which plaintiff alleges are "completely inaccessible" to her.[3]

Based on plaintiff's geographic proximity to her alma mater, her demonstrated history of returning to campus after graduation, her alleged plans to continue to return to campus, and the official events regularly offered on campus for alumni, it is reasonable to infer that plaintiff intends to return to Queens College.  Having met the three *Kreisler* factors, the

---

[2] Plaintiff's affidavit is attached to her Memorandum in Opposition to Defendant's Motion to Dismiss.  When considering a Rule 12(b)(1) motion to dismiss for lack of standing, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."  *Warth v. Seldin,* 422 U.S. 490, 501 (1975); *see also Thompson v. County of Franklin,* 15 F.3d 245, 249 (2d Cir. 1994).

[3] The Queens College website refers to the Benjamin S. Rosenthal Library as the "mecca of campus activity and learning."  (*See* Queens College Libraries website, *available at*: https://library.qc.cuny.edu/information/welcome.php.) (last visited 9/29/2016).)

13

court concludes that plaintiff has standing to pursue her claims. *See, e.g., Brown v. St. John's University*, No. 08-cv-2218, slip. op. at 8 (E.D.N.Y. June 28, 2010) (finding that former student who had graduated six years prior to bringing suit against defendant-university had standing to sue for ADA and Rehabilitation Act violations where "plaintiff alleges that 'he continues to regularly visit the campus as an alumni to use the library, attend various campus events and activities, and to see friends'").[4]  Accordingly, defendant's motion to dismiss for lack of standing is denied.  Defendant's fallback argument that even if plaintiff does have standing, she lacks standing "to seek an injunction for the entire 80-acre campus" is unavailing because the argument challenges the scope of relief plaintiff seeks – not whether plaintiff has standing to sue in the first instance.

## II.  Plaintiff's ADA and Rehabilitation Act Claims

Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public

---

[4] The court need not reach plaintiff's argument that her intention to serve as an "ADA tester" confers standing because of the court's finding that plaintiff has alleged sufficient facts to find standing. *See Harty v. Bull's Head Realty*, No. 3:11-cv-1760, 2013 WL 1131625, at *5 (D. Conn. Mar. 18, 2013) (declining to consider status as ADA tester as basis for standing and noting that "the issue of [ADA] tester status is unsettled in this Circuit").

entity, or be subjected to discrimination by any such entity."
42 U.S.C. § 12132. Section 504 of the Rehabilitation Act
requires that "[n]o otherwise qualified individual with a
disability . . . shall, solely by reason of her or his
disability, be excluded from the participation in, be denied the
benefits of, or be subjected to discrimination under any program
or activity receiving Federal financial assistance . . . ." 29
U.S.C. § 794(a). "Although its terms are broadly drawn, the
Rehabilitation Act incorporates the standards of the Americans
with Disabilities Act." *Cheung v. Donahoe*, No. 11-CV-122, 2016
WL 3640683, at *5 (E.D.N.Y. June 29, 2016). Consequently, "the
Second Circuit has held that the Rehabilitation Act and the ADA
impose identical requirements." *Gentile v. Potter*, 509 F. Supp.
2d 221, 231 n.5 (E.D.N.Y. 2007); *see also Rodriguez v. City of
New York*, 197 F.3d 611, 618 (2d Cir. 1999) (considering ADA and
Rehabilitation claims "in tandem" because "Section 504 of the
Rehabilitation Act and the ADA impose identical requirements").
The court, therefore, will consider defendant's Rule 12(b)(6)
challenge to plaintiff's ADA and Rehabilitation Act claims
together.

        To establish a prima facie violation of the ADA or the
Rehabilitation Act, plaintiff must show that 1) she is a
qualified individual with a disability; 2) CUNY is an entity
subject to the ADA and the Rehabilitation Act; and 3) plaintiff

was denied the opportunity to participate in or benefit from Queens College's services, programs, or activities, or Queens College otherwise discriminated against her by reason of her disability. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). With respect to the third element, the Second Circuit has explained that Title II of the ADA and the Rehabilitation Act "require only that entities make 'reasonable accommodations' to enable 'meaningful access' to services, programs, and activities." *Bernstein*, 621 Fed. App'x at 59-60.

Defendant concedes for purposes of this motion that plaintiff is a qualified individual with a disability and that CUNY is generally subject to the ADA and Rehabilitation Act. (Def. Mem. at 10.)[5] Defendant, however, challenges the third element necessary to show an ADA or Rehabilitation Act violation, arguing that plaintiff has not identified any services, programs, or activities at Queens College to which she was denied "meaningful access" due to architectural barriers. (Def. Mem. at 11.)

The court disagrees, and finds that plaintiff has stated claims for relief under both the ADA and the Rehabilitation Act. Plaintiff alleges, among other things, that

---

[5] Defendant's argument that plaintiff's ADA claim is barred by the Eleventh Amendment is addressed in Section III, *infra*.

while on campus she: (1) cannot access certain areas of the main library; (2) has difficulty using bathrooms due to inadequate door width, sinks with exposed pipes, absent grab bars, and amenities that are too high off the floor; (3) cannot access "emergency kiosks" on campus due to lack of clear floor space; (4) cannot access campus shuttle buses because they lack lifts for disabled passengers; and (5) cannot access seating in the Student Union or dining hall. (Compl. ¶ 23.) Accepting these allegations as true and drawing all reasonable inferences in plaintiff's favor, as the court must, plaintiff has plausibly alleged that she is being denied "meaningful access" to services (e.g., shuttle bus transportation) and activities (e.g., dining at the main dining hall) at Queens College. Therefore, the court denies defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim.

## III.    Eleventh Amendment Immunity

Finally, defendant argues that Eleventh Amendment sovereign immunity bars plaintiff's ADA claim against CUNY. (Def. Mem. at 13-17.) Plaintiff responds that the court need not decide this immunity issue at the pleadings stage. (Pl. Mem. at 23-24.) In the alternative, plaintiff argues that Congress has validly abrogated defendant's sovereign immunity under Title II of the ADA. (*Id.* at 24-28.)

The Eleventh Amendment provides that "[t]he Judicial

power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens, unless (1) the state consents to be sued, or (2) Congress validly abrogates the state's immunity.  *See Coll. Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670 (1999).

     The parties agree that defendant has consented to be sued under the Rehabilitation Act because it receives federal funding.  Congress enacted the Rehabilitation Act pursuant to its authority under the Spending Clause.  When acting pursuant to the Spending Clause, "Congress may provide funds to the states and may require that the states, as a condition of receiving those funds, waive their sovereign immunity."  *Marino v. City University of New York*, 18 F. Supp. 3d 320, 330 (E.D.N.Y. 2014) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. Of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001).  Section 504 of the Rehabilitation Act prohibits a program that receives federal funding from discriminating against a person based on a disability.  29 U.S.C. § 794(a).  The Second Circuit has held that Section 504 of the Rehabilitation Act "constitutes a clear

expression of Congress's intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity." *Garcia*, 280 F.3d at 113; *Keitt v. New York City*, 882 F. Supp. 2d 412, 425 (S.D.N.Y. 2011) ("Rehabilitation Act claims are not barred by the 11th Amendment because New York has waived sovereign immunity with respect to those claims."). Defendant acknowledges that plaintiff's Rehabilitation Act claim is not barred by the Eleventh Amendment because CUNY receives federal funds. (Def. Mem. at 14 n.4.)

The parties dispute whether the Eleventh Amendment bars plaintiff's ADA claim. Section 5 of the Fourteenth Amendment allows Congress to abrogate a state's sovereign immunity when it does so to enforce the substantive guarantees of that Amendment. *Tennessee v. Lane*, 541 U.S. 509, 518 (2004). With respect to state immunity under Title II of the ADA, Congress provided that:

> A state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State.

42 U.S.C. § 12202. In *United States v. Georgia*, the Supreme Court considered this provision of the ADA and held that

"insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  546 U.S. 151, 159 (2006) (emphasis in original).  Although *Georgia* held that Congress validly abrogated states' sovereign immunity for certain claims under Title II of the ADA (i.e., Title II violations that also violate the Fourteenth Amendment), it "explicitly left open the question of whether Congress may validly abrogate sovereign immunity with respect to a particular class of misconduct that violates Title II but does not violate the Fourteenth Amendment."  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sci.*, 804 F.3d 178, 194 (2d Cir. 2015).  This "open question" is relevant here because plaintiff arguably does not allege a specific constitutional violation against CUNY.  After *Georgia*, the Second Circuit has not decided whether abrogation of immunity is enforceable in the circumstance presented here: a Title II ADA claim brought against a public educational institution where arguably there is no specific constitutional violation alleged. *See Dean*, 804 F.3d at 195 ("We express no position as to the question of whether Congress has validly abrogated sovereign immunity in the context of discrimination in access to public education on the basis of disability.")

In the absence of guidance from the Second Circuit, the court need not resolve this issue at the pleadings stage. *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445–46 (1988) (discussing the "fundamental and longstanding principle of judicial restraint [that] requires courts avoid reaching constitutional questions in advance of the necessity of deciding them"). Because sovereign immunity does not bar plaintiff's Rehabilitation Act claim, the court has subject matter jurisdiction over this action regardless of CUNY's immunity from the ADA claim. Consequently, there is no risk of violating CUNY's "right not to be haled into court" when it is immune from suit. *See Smith v. Reagan*, 841 F.2d 28, 30 (2d Cir. 1988). Moreover, the remedies available to plaintiff under Title II of the ADA and the Rehabilitation Act are identical. *See* 42 U.S.C. § 12133 (requiring that remedies, procedures and rights under Title II of ADA are identical to those under § 504 of the Rehabilitation Act); *see also Pace v. Bogalusa v. City Sch. Bd.*, 403 F.3d 272, 287–89 (5th Cir. 2005) (finding it unnecessary to address abrogation under Title II of the ADA "given that [Title II's] rights and remedies are identical to and duplicative of those provided in § 504"). Thus, as a practical matter, this case will proceed on the same course regardless of whether CUNY may later be found immune from

plaintiff's ADA claim.[6]  Defendant's motion to dismiss

plaintiff's ADA claim on sovereign immunity grounds is denied.

## Conclusion

For the foregoing reasons, defendant's motion to

dismiss is denied.  By October 7, 2016, the parties shall submit

a joint letter to the court indicating: (1) whether defendant

consents to plaintiff's amendment of the Complaint to add

claim(s) against Chancellor Milliken in his official capacity;

and (2) whether the parties wish to be referred to mediation to

help resolve this matter.

**SO ORDERED.**

Dated:    September 29, 2016
          Brooklyn, New York

                              _____/s/_____
                              Kiyo A. Matsumoto
                              United States District Judge

---

[6] In any event, plaintiff represents that it will move to amend the Complaint
to assert an ADA claim against CUNY Chancellor James B. Milliken in his
official capacity under the exception to Eleventh Amendment immunity
established in *Ex parte Young*, 209 U.S. 123 (1908).  (Pl. Mem. at 28 n.52.)
Defendant concedes that the Eleventh Amendment would not bar an ADA claim for
prospective declaratory and injunctive relief against Chancellor Milliken in
his official capacity (Def. Reply at 8.), which effectively would moot the
sovereign immunity issue altogether.