UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

| | | |
|---|---|---|
| KATHLEEN ROSS, an individual, | : | |
| | : | |
| Plaintiff, | : | |
| | : | **STIPULATION AND** |
| -against- | : | **ORDER OF DISMISSAL** |
| | : | **WITH PREJUDICE** |
| THE CITY UNIVERSITY OF NEW YORK, | : | |
| as the political Entity responsible for Queens | : | 15-CV-4252 (KAM) (VMS) |
| College; and JAMES MILLIKEN, in his official | : | |
| capacity only, | : | **ORIGINAL FILED BY ECF** |
| | : | |
| Defendants. | : | |
| | : | |

-----------------------------------------------------------------X

WHEREAS, Plaintiff Kathleen Ross ("Plaintiff") commenced this action by filing a complaint on or about July 21, 2015 ("the Complaint") in the United States District Court for the Eastern District of New York against The City University of New York ("CUNY"), alleging the existence of architectural elements and other conditions that limited access on the Queens College campus to individuals with disabilities and asserting claims pursuant to the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 et seq.; and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq. (the "Action"); and

WHEREAS, on October 20, 2016, Plaintiff filed a First Amended Complaint asserting claims pursuant to the RA and Title II of the ADA against CUNY and against James Milliken, in his official capacity as Chancellor of CUNY ("Chancellor Milliken"), for injunctive and declaratory relief; and

WHEREAS, in the course of discovery, an engineering expert retained by Plaintiff, Nicholas Heybeck, inspected the Queens College campus and authored a report identifying components of the Queens College campus that were alleged not to comply with the ADA Standards for Accessible Design (the "Heybeck Report"); and

1

WHEREAS, the Defendants expressly deny any wrongful conduct or liability, or violation of any federal, state, or local statute, ordinance, law in this matter whatsoever; and

WHEREAS, Plaintiff and the Defendants desire to fully resolve the claims between them and any and all other disputes, whether known or unknown, without further litigation, arbitration or proceedings and without admission of fault or liability;

NOW THEREFORE, in consideration of the mutual promises, covenants, representations and other consideration contained in this Settlement Agreement, Plaintiff and CUNY hereby stipulate and agree as follows:

## I.  Dismissal of the Action With Prejudice.

The Action and all claims which were or could have been asserted therein are dismissed with prejudice pursuant to Fed. R. Civ. P. 41(a) and without payments, attorneys' fees, costs, disbursements, or expenses in excess of the amounts set forth in Paragraph II(A) of this Settlement Agreement.

## II.  Settlement Payments

A.      Payments to Plaintiff and Her Attorneys.

For and in full consideration of Plaintiff's execution of this Settlement Agreement, her agreement to be bound by its terms, and her undertakings as set forth herein including, but not limited to, the dismissal of the Action with prejudice against Defendants and the execution of all necessary and appropriate vouchers and other documentation as may be required to effectuate payment, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the following payments shall be made in full and final satisfaction of all claims, allegations and causes of actions, direct or indirect, known or unknown, that Plaintiff had, has or may have had against the State of New York and CUNY, together with all of their present and former agencies, principals, officers, directors, members, trustees, shareholders, employees,

agents, attorneys, insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, whether in their personal or official capacities, including but not limited to Chancellor Milliken, arising out of conduct, acts, or omissions prior to, up to and including the date of this Settlement Agreement, including but not limited to those asserted in the Action, as well as in full and complete satisfaction of all claims for compensatory damages (including but not limited to pain and suffering, mental and emotional anguish and trauma, damage to reputation, punitive damages, and liquidated damages), lost wages, benefits, and economic damages (including but not limited to back pay, front pay, severance pay, commissions, bonuses, reimbursements, and pension plan contributions), and attorneys' fees, costs, disbursements, and expenses incurred by Plaintiff for any and all counsel who have assisted Plaintiff, or at any time represented Plaintiff in the Action as well as in connection with any other representation, negotiation, proceeding, administrative, judicial, or otherwise, and any other claim or action alleging any of the acts, transactions, occurrences, or omissions asserted in the Action:

1.      The State of New York, on behalf of CUNY, shall pay to Plaintiff Kathleen Ross, the sum of Twenty-Three Thousand Dollars ($23,000), for which an I.R.S. Form 1099 shall be issued, in full and complete satisfaction of any and all claims by Plaintiff for compensatory damages (including but not limited to pain and suffering, mental and emotional anguish and trauma, damage to reputation, economic damages, punitive damages, and liquidated damages). The foregoing payment shall be made payable to the order of "Kathleen Ross" and sent to Andrew D. Bizer, Esq., Bizer & DeReus, L.L.C., 3319 St. Claude Avenue, New Orleans, Louisiana 70117.

2.      The State of New York, on behalf of CUNY, shall pay to the law firm of Bizer & DeReus the sum of Ninety Thousand Dollars ($90,000), for which an I.R.S. Form 1099 shall be issued, in full and complete satisfaction of any and all claims by Plaintiff for attorneys' fees, costs,

disbursements and expenses, including costs and expenses related to expert services, incurred by Plaintiff in this action, including for any and all counsel who have at any time represented Plaintiff in this Action as well as in connection with any other proceeding, grievance, administrative, judicial, formal or informal or otherwise, including but not limited to any other claim, grievance or action alleging any of the acts, transactions, occurrences, or omissions asserted in the Action or elsewhere. The foregoing payment shall be made payable to the order of "Bizer & DeReus, L.L.C." and sent to Andrew D. Bizer, Esq., Bizer & DeReus, L.L.C., 3319 St. Claude Avenue, New Orleans, Louisiana 70117.

      B.     State Approval of Payments.

The payments referenced in Paragraph II(A) of this Settlement Agreement are conditioned upon and subject to the approval of all appropriate state officials in accordance with N.Y. Public Officers Law § 17 and the "So Ordering" of this Settlement Agreement by the Court. Plaintiff and Plaintiff's attorney agree to execute and deliver all necessary and appropriate vouchers and other documentation requested with respect to obtaining such approval and effectuating payment, including the Affidavit of Medicare Eligibility Status attached hereto as Exhibit A and any required attachments thereto. In the event such approvals are not obtained or the Court does not "so order" this Settlement Agreement, then this Settlement Agreement shall be null, void, and of no further force and effect.

      C.     Accrual of Interest.

In the event that the payments referenced in Paragraph II(A) of this Settlement Agreement have not been made by the one hundred twentieth day after the latest of receipt by the New York State Department of Law of a "So Ordered" copy of this Settlement Agreement, together with all other documentation required under Paragraph II(B) of this Settlement Agreement, interest on any

part of the sum not paid by the one hundred twentieth day shall begin to run on the one hundred

twenty-first day at the statutory rate pursuant to 28 U.S.C. § 1961.

      D.     Liability of Plaintiff for Taxes.

     Any taxes, or interest or penalties on taxes, on the payments or services referred to in

Paragraph II(A) of this Settlement Agreement shall be the sole and complete responsibility of

Plaintiff (or her attorneys respectively, for fees paid to said attorneys) and Plaintiff and her

attorneys shall have no claim, right, or cause of action against CUNY, the State of New York, or

any of their agencies, departments, or subdivisions on account of such taxes, interest, or penalties.

In the event that any taxing authority or any other federal, state or local government,

administrative agency or court issues a final determination that CUNY and/or the State of New

York is liable for the failure of Plaintiff (or her attorneys for any attorneys' fees hereunder) to pay

federal, state or local income, or other taxes or withholdings with respect to any portion of the

payments referred to in Paragraph II(A) of this Settlement Agreement, or are liable for interest or

penalties related thereto, Plaintiff (or her attorneys, for liabilities with respect to fees paid to

them) agree to reimburse and indemnify CUNY and/or the State of New York for such liability

with respect to any portion of the payments referred to in Paragraph II(A) of this Settlement

Agreement, so long as Plaintiff has been provided with notice of any such claim or proceeding

promptly following receipt of notice of such claim or proceeding by CUNY and/or the State of

New York.

      E.     Medicare Certification.

     As a Medicare recipient, Plaintiff agrees to notify Medicare, as well as any Medicare Part

C Plan (also referred to as Medicare Advantage Plans, Medi-Gap Plans), (collectively hereinafter

referred to as "Medicare") of the settlement in this Action and obtain a Conditional Payment

Letter and Final Demand Letter for medical treatment and/or prescription paid by Medicare

relating to the injuries alleged in this Action.  Plaintiff further agrees to provide a completed and

notarized Affidavit of Medicare Eligibility Status in the form annexed hereto as Exhibit A

(hereinafter referred to as "Medicare Affidavit"), to the Office of the Attorney General.  Plaintiff

and her attorneys acknowledge and understand that receipt of the fully executed Medicare

Affidavit together with any required attachments is a prerequisite to payment of the settlement

amount referenced in Paragraph II(A)(1) of this Settlement Agreement.  Furthermore, Plaintiff

acknowledges and understands that a Medicare Set-Aside Trust may also be required, pursuant to

42 U.S.C. § 1395y(b) and 42 C.F.R. §§ 411.22 through 411.26, if future anticipated medical costs

are found to be necessary and in accordance with the Medicare Affidavit.

   F.  Liability of Plaintiff for Medicare Liens.

   Plaintiff agrees to defend, indemnify and hold harmless CUNY and the State of New York

(including, but not limited to, any and all agencies, departments, and subdivisions thereof),

regarding any liens or past and/or future Medicare payments, presently known or unknown in

connection with this matter.  If conditional and/or future anticipated Medicare payments have not

been satisfied, the State of New York reserves the right to issue a multi-party settlement check

naming Medicare as a payee or to issue a check to Medicare directly based on Medicare's

Conditional Payment Letter and/or Final Demand Letter.

   G.  Liability of Plaintiff for Liens.

   Plaintiff agrees that neither CUNY, the State of New York (including, but not limited to,

any and all agencies, departments, and subdivisions thereof), nor any of their officials, employees,

or agents, whether in their individual or official capacities, including but not limited to Chancellor

Milliken or his successor, shall be responsible for any liens, off-sets, deductions or recoupments

of any kind (including, but not limited to, any and all workers' compensation, tax, child support,

unemployment compensation, Medicare or Medicaid liens, off-sets, deductions or recoupments)

which may attach to the payments referenced in Paragraph II(A) of this Settlement Agreement. Plaintiff shall have no claim, right, or cause of action against CUNY, the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof), or any of their officials, employees, or agents, whether in their individual or official capacities, including but not limited to Chancellor Milliken, on account of such liens, off-sets, deductions or recoupments, and agrees that she will defend, indemnify, and hold harmless CUNY, the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof), and any of their officials, employees, or agents, whether in their individual or official capacities, for the satisfaction of any such liens, off-sets, deductions or recoupments.

### III. Actions to be Taken by CUNY to Improve Access for Individuals with Disabilities on the Queens College Campus.

Without conceding that any individual with a disability has been denied or is currently being denied the opportunity to participate in or benefit from services, programs or activities offered on the Queens College campus, CUNY agrees to do the following:

A. Shuttle Buses.

By September 1, 2018, CUNY shall engage a service to provide accessible transportation to students with disabilities which inhibit or impair their mobility on the Queens College campus and to all of the locations that are presently (or added at a later time) serviced by the Queens College shuttle bus. Through a web-based portal or "app," students with disabilities shall be able to pre-arrange for scheduled pick-ups. CUNY shall post signage regarding the details of service at the Student Union stop for the Queens College shuttle bus. Furthermore, CUNY will share the information regarding this transportation service on its website. CUNY shall provide a pamphlet with the information regarding this transportation service to all students who register with the

Disabilities Office, regardless of the nature of their disability.  CUNY may discontinue

any alternative transportation service for students with disabilities if the Queens College

shuttle buses are brought into compliance with the 2010 ADAAG.

B.      Accessible Routes (Capital Project).

By letter dated April 12, 2018, CUNY directed the Dormitory Authority of the

State of New York to set up a new capital project (the "ADA Master Plan") to bring

exterior ramps, curb cuts, walkways, restrooms, drinking fountains, and interior walkways

on the Queens College campus into compliance with the 2010 ADAAG, with an initial

funding allocation of $1,000,000, specifically intending to address the exterior ramp, curb

cut, and walkway elements on the Queens College campus identified in the Heybeck

Report as items 1-8, 14-16, 19-20, 22-26, 28-29, 31-34, 36-37, 39, 41, 43, 48-49, 51, 53-

54, 58-61, 63, 65-68, 70-73, 77-83, 86-87, 89-90, 92-95, 98-101, 103, 108-112, 117-118,

122-124, 127-130, 132-135, 145, 148, 151-152, 156, 158-163, 167-172, 174-177, 179,

181-182, 185, 188-189, 192-193, 196-197, 199-200, 267, 279, 323, 430.  See Exhibit B.

By September 1, 2022, CUNY shall develop and use its best efforts to secure any

additional necessary funding and complete these items, if any remains outstanding.  The

parties understand that the ADA Master Plan may address other items not identified herein

or in the parties' expert submissions at CUNY's discretion.

C.      Accessible Routes (Non-Capital Project).

By September 1, 2020, CUNY shall address and bring into compliance with the

2010 ADAAG the exterior ramps, curb cuts, and walkways identified in the Heybeck

Report as items 9-13, 17-18, 21, 27, 30, 35, 38, 40, 42, 44-47, 50, 52, 55-57, 69, 74-75,

85, 88, 91, 96-97, 104-107, 113-116, 119-121, 125-126, 136-137, 141-144, 147, 157, 164-

165, 173, 178, 180, 186-187, 190-191, 194, 198, 201-202.

D.      Access to the Benjamin S. Rosenthal Library.

By September 1, 2018, CUNY shall implement a procedure permitting patrons of the Benjamin S. Rosenthal Library to request that library staff members retrieve books or other library materials if a patron is unable to access the book or other library material because of a disability.  Notice of this procedure will be prominently displayed at the entrance to the Benjamin S. Rosenthal Library and on each floor of the Benjamin S. Rosenthal Library.

E.      Counters, Tables and Seating.

By March 31, 2019, CUNY shall address and bring into compliance with the 2010 ADAAG the counters, table, and bench identified in the Heybeck Report as items 203-205, 242-247, 268, 272, 280-283, 345, 360, 379-381, 391.

F.      Vending Machines, "Q Card" Machines, and Other Devices.

By March 31, 2019, CUNY shall address and bring into compliance with the 2010 ADAAG the vending machines, "Q Card" machines, and devices identified in the Heybeck Report as items 206, 241, 266, 269-271, 284, 299-302, 333, 335-336, 368-370, 392-395.

G.      Colden Auditorium.

By March 31, 2019, CUNY shall install a wheelchair lift to provide an accessible route to the stage area of the Colden Auditorium.

H.      Restrooms (Capital Project).

By letter dated April 12, 2018, CUNY directed the Dormitory Authority of the State of New York to set up a new capital project (the "ADA Master Plan") to bring exterior ramps, curb cuts, walkways, restrooms, drinking fountains, and interior walkways on the Queens College campus into compliance with the 2010 ADAAG, with an initial

funding allocation of $1,000,000, specifically intending to address the restroom elements on the Queens College campus identified in the Heybeck Report as items: 211 (Queens Hall); 232-238 (Science Building); 260 (Library); 292-296, 303-308, 310-313 (Q Cafe); 324-332 (Rathaus Hall); 344, 346-357, 359 (Kiely Hall); 366-367, 372-377 (Research Building); 384-385, 390, 396-400, 403-426 (Student Union); 435-438 (Colden Auditorium).  See Exhibit B.  By September 1, 2022, CUNY shall develop and use its best efforts to secure any additional necessary funding and complete these items, if any remain outstanding.  The parties understand that the ADA Master Plan may address other items not identified herein or in the parties' expert submissions at CUNY's discretion.

I.      Restrooms (Non-Capital Project).

By September 1, 2020, CUNY shall address and bring into compliance with the 2010 ADAAG the restroom elements identified in the Heybeck Report as items: 207-209, 213-224, 226 (Queens Hall); 229-230 (Science Building); 248-249, 251-259 (Library); 274-276 (Powdermaker Hall); 291, 297-298, 314 (Q Cafe); 358 (Kiely Hall).

J.      Drinking Fountains (Capital Project).

By letter dated April 12, 2018, CUNY directed the Dormitory Authority of the State of New York to set up a new capital project (the "ADA Master Plan") to bring exterior ramps, curb cuts, walkways, restrooms, drinking fountains, and interior walkways on the Queens College campus into compliance with the 2010 ADAAG, with an initial funding allocation of $1,000,000, specifically intending to address the drinking fountain elements on the Queens College campus identified in the Heybeck Report as items 225, 231, 263, 273, 278, 334, 363, 427-429.  See Exhibit B.  By September 1, 2022, CUNY shall develop and use its best efforts to secure any additional necessary funding and complete these items, if any remain outstanding.  The parties understand that the ADA

10

Master Plan may address other items not identified herein or in the parties' expert submissions at CUNY's discretion.

K.      Interior Doorways and Doors (Capital Project).

By letter dated April 12, 2018, CUNY directed the Dormitory Authority of the State of New York to set up a new capital project (the "ADA Master Plan") to bring exterior ramps, curb cuts, walkways, restrooms, drinking fountains, and interior walkways on the Queens College campus into compliance with the 2010 ADAAG, with an initial funding allocation of $1,000,000, specifically intending to address the interior doorway and interior door elements on the Queens College campus identified in the Heybeck Report as items 212, 228, 277, 287-289, 318-322, 337-343, 361-362, 365, 382, 386, 433. See Exhibit B.  By September 1, 2022, CUNY shall develop and use its best efforts to secure any additional necessary funding and complete these items, if any remain outstanding .  The parties understand that the ADA Master Plan may address other items not identified herein or in the parties' expert submissions at CUNY's discretion.

L.      Interior Walkways (Capital Project).

By letter dated April 12, 2018, CUNY directed the Dormitory Authority of the State of New York to set up a new capital project (the "ADA Master Plan") to bring exterior ramps, curb cuts, walkways, restrooms, drinking fountains, and interior walkways on the Queens College campus into compliance with the 2010 ADAAG, with an initial funding allocation of $1,000,000, specifically intending to address the interior ramp and walkway elements on the Queens College campus identified in the Heybeck Report as items 239-240, 285-286, 371.  See Exhibit B.  By September 1, 2022, CUNY shall develop and use its best efforts to secure any additional necessary funding and complete these items, if any remain outstanding.  The parties understand that the ADA Master Plan

may address other items not identified herein or in the parties' expert submissions at CUNY's discretion.

 M. Snow Management Protocol.

  By September 1, 2018, CUNY shall amend the Snow Management Protocol followed by the Office of Buildings and Grounds on the Queens College campus to add: "Please inspect and maintain all wheelchair-accessible ramps to ensure they are kept free and clear of any ice and snow. Do NOT shovel snow so that snow drifts cover wheelchair accessible ramps."

In undertaking these actions, CUNY shall use its own discretion to achieve compliance with the 2010 ADAAG, relying on their own engineering and design professionals' counseling and advice. Further, CUNY reserves its full rights to otherwise change or modify the Queens College campus, and to make changes to the programs and services offered on the Queens College campus, and CUNY will be under no obligation to undertake any action described in this Paragraph for items identified in the Heybeck Report that are no longer in use and/or are brought into compliance with the 2010 ADAAG following implementation of the capital projects and ADA Master Plan described herein.

**IV. <u>No representations by Plaintiff.</u>**

  Plaintiff makes no representation or guarantees regarding whether the actions to be taken by CUNY as set forth in Paragraph III of this Settlement Agreement comply with the ADA, county or city regulations or codes, or any other statute, act, law, rule regulation, code, standard or state of local governing body whatsoever.

**V. <u>Annual Written Reporting.</u>**

  CUNY or its counsel will provide Plaintiff's counsel with written reports on an annual basis describing its efforts over the past calendar year (January 1-December 31) to comply with

its obligations set forth in Paragraph III of this Settlement Agreement, including steps taken by

CUNY to bring to completion the proposed capital projects referenced therein.  Unless another

date is agreed to by the parties, the first annual report for year 2018 will be due by February 15,

2019, with subsequent annual reports also due by February 15 (e.g., the annual report for the 2020

will be due by February 15, 2021).  CUNY is under no obligation to provide any additional

annual reports after it serves an annual report for the year 2022.

## VI.    **General Release.**

For and in consideration of the payments referenced in Paragraph II(A) of this Settlement

Agreement, the covenants set forth in Section III, and other good and valuable consideration, the

sufficiency of which is hereby acknowledged, and except for the rights and obligations set forth in

this Settlement Agreement, Plaintiff, on behalf of herself, her heirs, executors, administrators,

successors, and assigns (collectively "the Releasing Parties"), hereby releases and forever

discharges, the State of New York, CUNY, together with all of their present and former

principals, officers, directors, members, trustees, shareholders, employees, agents, attorneys,

insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, personally and in their

official capacities, including but not limited to the Individual Defendants in their personal and

official capacities (collectively "the Released Parties"), from all manner of actions, injuries,

proceedings, causes of action, grievances, suits, debts, obligations, dues, sums of money,

accounts, contracts, controversies, agreements, promises, damages, judgments, claims, and

demands whatsoever, direct or indirect, known or unknown, discovered or undiscovered, that the

Releasing Parties ever had, now have, or shall or may have in the future against some, any, or all

of the Released Parties, for or by reason of any act, transaction, occurrence, omission, cause,

matter, or thing whatsoever up to and including the date of this Settlement Agreement, including

but not limited to: (a) any and all claims regarding or arising out of the acts, transactions,

13

occurrences, or omissions which are described, alleged, or contained in the Action; (b) any and all claims regarding or arising directly or indirectly from Plaintiff's association with any of the Released Parties or the terms and conditions of their association with any of the Released Parties; (c) any and all claims of retaliation or discrimination based upon disability, age, race, color, national origin, ancestry, religion, marital status, sex, sexual harassment, sexual orientation, citizenship, military service, status, or medical condition; (d) any and all claims under federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders; and (e) any and all other claims, whether for moneys owed, damages (including but not limited to claims for equitable relief, compensatory, punitive, or other damages), vocational services, breach of implied or express contract, breach of promise, misrepresentation, negligence, fraud, estoppel, defamation, assault, battery, infliction of emotional distress, tortious interference with contract, tortious interference with business relations, tortious interference with prospective contractual relations, tortious interference with prospective business relations, violation of public policy, wrongful or constructive discharge, or any other tort, or any claim for costs, fees, or other expenses, including attorneys' fees, or any other claims under federal, state, or local law relating to employment, education, vocational services, discrimination, retaliation, retirement, or otherwise.

CUNY hereby releases, acquits, remises and forever discharges Plaintiff from any and all claims, causes, damages, demands, liabilities, equities and any and all other claims, whether known or unknown, from the beginning of the world to the date of this Settlement Agreement which specifically relate to Plaintiff's claims in this lawsuit.

## VII.   **Other Provisions.**

A.      No Other Action Commenced.

Other than the Action, Plaintiff represents that she has not commenced, maintained, or prosecuted any action, charge, complaint, grievance, or proceeding of any kind against the State of New York or CUNY, including but not limited to any of its present and former principals, officers, directors, members, trustees, shareholders, affiliates, employees, agents, attorneys, insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, personally or in their official capacities, that none of the foregoing is currently pending in any court or before any administrative or investigative body or agency, and acknowledge that this representation constitutes a material inducement for CUNY to enter into this Settlement Agreement.

B.      Waiver of Attorney's Lien.

Subject to receipt of the payment described in Paragraph II(A) of this Settlement Agreement, the undersigned attorneys for Plaintiff hereby release and waive their lien for services upon the above-named Plaintiff's causes of action, claim, verdict, report, judgment, determination, or settlement in favor of said Plaintiff which they have thereon and by virtue of Section 475 of the New York Judiciary Law or otherwise.

C.      No Other Attorney.

The undersigned attorneys for Plaintiff further represent that there are no attorneys having a lien for services rendered to Plaintiff pursuant to the provisions of Section 475 of the New York Judiciary Law or otherwise in regard in this Action, or in any other action or proceeding alleging any of the acts, transactions, occurrences or omissions asserted in this Action.  The undersigned attorneys further agree to indemnify and hold harmless the State of New York and/or CUNY from any liability or claims for attorneys' fees and/or disbursements incurred by Plaintiff in connection with this Action or in connection with any other representation, negotiation, proceeding,

administrative, judicial or otherwise, and any other claim or action alleging any of the acts, transactions, occurrences or omissions, asserted in the Action.

       D.      Recourse in the Event of Material Non-Compliance.

If Plaintiff believes that CUNY has failed to materially comply with the obligations specified in Section III of this Settlement Agreement by the dates specified therein, Plaintiff reserves her right to seek to enforce the Settlement Agreement by a contempt motion before this Court, provided that Plaintiff shall give CUNY written notice of the alleged breach of the Settlement Agreement at least forty-five (45) days before any such motion is filed and an opportunity to cure or provide justification for any failure to cure.  The written notice must refer to the item number(s) in the Heybeck Report that Plaintiff contends are part of a breach and provide other sufficiently detailed information to reasonably identity the nature and scope of CUNY's alleged breach.

Any contempt motion filed to enforce the Settlement Agreement shall be granted or denied in accordance with the controlling standards for such a finding.  Any contempt finding shall be without prejudice to CUNY's rights of appellate review of such a finding as a final order under 28 U.S.C. § 1291.

If Plaintiff files a contempt motion to enforce the Settlement Agreement and prevails, Plaintiff shall be entitled to recover reasonable fees and costs.

       E.      No Prevailing Party.

Neither Plaintiff nor Defendants shall be deemed a "prevailing party" for any purpose, including but not limited to any statutory or contractual claim based upon "prevailing party" status with respect to the Action.

F.      Binding Effect on Successors and Assigns.

The terms and conditions of this Settlement Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of each party hereto.

G.      Authority.

Each signatory to this Settlement Agreement hereby represents and warrants that he, she, or it has the requisite authority to enter into this Settlement Agreement, and has not previously assigned or transferred any rights or interests with respect to the matters covered by this Settlement Agreement.

H.      Voluntary Agreement.

Plaintiff represents that she has thoroughly discussed all aspects of this Settlement Agreement (including the General Release set forth in Section VI) with her attorney, and Plaintiff represents that she has carefully read and fully understands all of the provisions of the Settlement Agreement.  Plaintiff represents that she executes and delivers the Settlement Agreement voluntarily after being fully informed of its terms, contents, and effect, and acknowledges that she understands its terms, contents, and effect.  Plaintiff acknowledges that she has been advised of her right to seek the advice of an attorney and that she is and has been represented by counsel of her own choosing before agreeing to any settlement or release, and no compromise or representation of any kind, other than as set forth or referred to herein, has been made to any party or any one acting on behalf of any party.

I.      Negotiated Agreement.

The parties acknowledge that each party has cooperated in the drafting and preparation of this Settlement Agreement.  The language in all parts of this Settlement Agreement shall be in all cases construed according to its fair meaning and not strictly for or against any party.

J.     No Admission of Liability.

It is understood and agreed that any actions taken or payments made pursuant to this Settlement Agreement are made solely to avoid the burdens and expense of protracted litigation; that this Settlement Agreement and the actions taken pursuant hereto are not to be construed as constituting any determination on the merits of any claims in this dispute or as constituting any admission of wrongdoing or liability on the part of the State of New York or CUNY, and/or any of their present and former principals, officers, directors, members, trustees, shareholders, affiliates, employees, agents, attorneys, insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, personally and in their official capacities, and that they expressly deny any wrongdoing or liability.  Nothing contained in this Settlement Agreement shall be deemed to constitute a policy or practice of the State of New York or CUNY.

K.     No Precedential Value.

This Settlement Agreement shall not in any manner be construed as determinative of the issues raised in the Action, or any other proceeding, and shall have no precedential value.  In addition, notwithstanding the provisions of any paragraph herein, this Settlement Agreement shall not bind or collaterally estop the State of New York or CUNY, or any of their present and former principals, officers, directors, members, trustees, shareholders, affiliates, employees, agents, attorneys, insurers, subdivisions, subsidiaries, heirs, administrators, and assigns, personally and in their official capacities, in pending or future actions or proceedings in which the same or similar issues are raised, from defending any and all issues raised in said actions or proceedings, or from advancing any defenses.

L.     Entire Agreement.

This Settlement Agreement constitutes the entire agreement between the parties hereto pertaining to the subject matter hereof, and supersedes and embodies, merges and integrates all

prior and current agreements and understandings of the parties hereto, whether written or oral, with respect to the subject matter of this Settlement Agreement, and may not be clarified, modified, changed, or amended except in a writing duly executed by the parties hereto or an authorized representative of the parties hereto.

      M.     Governing Law.

The terms of this Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts to be performed wholly within the State of New York, except to the extent that federal law applies to the releases and waiver of federal claims pursuant to this Settlement Agreement.

      N.     Severability.

If any provision of this Settlement Agreement shall be held by a court of competent jurisdiction to be invalid, void, or unenforceable in whole or in part, such decision shall not invalidate the remaining portion or affect its validity.

      O.     Headings.

The headings contained in this Settlement Agreement are for convenience of reference only and are not a material part of this Settlement Agreement.

      P.     Submission to the Court.

Upon its execution, this Settlement Agreement may be submitted to the Court to be "So Ordered" by any party without further notice.

      Q.     Counterparts.

This Settlement Agreement may be executed in several counterparts, each of which shall be deemed an original and which, taken together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto acknowledge that they have read this

Settlement Agreement and accept and agree to the provisions contained herein.

PETER J. LA BELLA
Commissioner of Deeds
City of New York - No. 4-2785
Certificate Filed in Queens County
Commission Expires June 1, 20__

_Kathleen Ross_
KATHLEEN ROSS

STATE OF NEW YORK, COUNTY OF ___Queens___ : §§ :

On __7/6/18__, 2018, before me personally came and appeared Kathleen Ross, known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and who duly acknowledged to me that she executed the same.

NOTARY PUBLIC

BIZER & DEREUS, LLC
Attorneys for Plaintiff
By:

Andrew D. Bizer, Esq.
3319 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 619-9999

Dated: __7/13__, 2018

20

BARBARA D. UNDERWOOD
Attorney General of the
 State of New York
Attorney for Defendants
By:


_____

Steven L. Banks
Assistant Attorney General
28 Liberty Street, 17th Floor
New York, New York 10005
(212) 416-8621

Dated: _July 16_____, 2018


SO ORDERED:


_____

HONORABLE KIYO A. MATSUMOTO
United States District Judge

Dated:  Brooklyn, New York
            _____, 2018


21

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

KATHLEEN ROSS, an individual,                    :
                                                 :
                              Plaintiff,          :          **AFFIDAVIT OF MEDICARE**
                                                 :          **ELIGIBILITY STATUS**
                 -against-                        :
                                                 :
THE CITY UNIVERSITY OF NEW YORK,                 :          15-CV-4252 (KAM) (VMS)
as the political Entity responsible for Queens    :
College; and JAMES MILLIKEN, in his official      :
capacity only,                                    :
                                                 :
                              Defendants.          :
                                                 :
------------------------------------------------------------X

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF QUEENS       )

       KATHLEEN ROSS, being duly sworn, says:

    1.     I am the plaintiff in the above-entitled action and I reside at

_____.

    2.     I am making this affidavit with full knowledge that the same will be relied upon by

the State of New York, its agents, employees and representatives ("OAG") in connection with

settlement of this action, specifically as it relates to the OAG's obligations as to Medicare

compliance primarily pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension

Act of 2007 ("MMSEA") and the Medicare Secondary Payer Act ("MSP").  ***[Note: A query will***

***be / has been made pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension***

***Act of 2007, 42 US.C. 1395(B)(8) to verify your current Medicare status ].***

    3.     I hereby acknowledge and understand that as mandated by CMS and promulgated

by and through its rules and regulations including but not limited to the MMSEA and/or MSP, I

am required to:

      a.     reimburse Medicare for *conditional payments* it has made from the

           settlement herein; and/or

      b.     utilize the settlement proceeds to pay for future medical expenses, when

           necessary.

4.     I further acknowledge that the information provided herein will be relied upon by defendants and OAG as true and accurate and, when applicable, will be used for reporting pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 and/or as deemed necessary and/or required by the defendants and OAG.

5.     I hereby agree to promptly provide the OAG with any and all information necessary and required for its reporting pursuant to Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007.

## PEDIGREE INFORMATION

6.     I have been known by (include all alias name(s), former name(s) and/or maiden name(s)) the following names: _____

_____. I hereby acknowledge that I can be identified by this/these name(s) and all these names are indeed referring to me.

7.     I consent to OAG verifying my current Medicare eligibility for purposes of its compliance with Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007.  I affirm:

      a.     my social security number is _____;

      b.     my date of birth is _____;

      c.     my gender is   male   female  (circle one).

## CURRENT MEDICARE ELIGIBILITY

*✐ Initial and affirm applicable current Medicare eligibility status ✐*

1.  As of the date of this affidavit:

    a.  ✐_____  I am not currently receiving nor have I ever received

    Medicare coverage and/or benefits;

    **OR**

    b.  ✐_____  I am a Medicare beneficiary and my Medicare number [HIC

    #] is _____.  I am aware of my obligation to

    reimburse Medicare, as well as any Medicare Part C Plan (also referred to

    as Medicare Advantage Plans, Medi-Gap Plans), (collectively hereinafter

    referred to as "Medicare") for payments and/or benefits that I received

    directly or indirectly from Medicare for medical expenses for injuries that

    were the subject of this personal injury action.  I understand that

    reimbursement directly to Medicare may be made from proceeds I receive

    from the settlement of this personal injury action; and

    i.  ✐_____  Medicare has confirmed that no payment is due and

    owing from the total proceeds of the above-captioned litigation; or

    ii.  ✐_____  Medicare has confirmed that it will accept the total

    amount of $_____ as full and final reimbursement of all

    Medicare payments made to date.  ***(Attach copy of Medicare***

    ***reimbursement letter)***.  In accordance with the attached Medicare

    letter, I consent to the payment of that sum directly from the total

    proceeds of the above-captioned litigation; or

    iii.  ✐_____  I am awaiting a Final Demand letter or equivalent

    information from Medicare.  Upon my receipt of the necessary

documentation, I will promptly provide it to Steven L. Banks, AAG

and to OAG's Medicare Compliance via email at

Medicare.Compliance@ag.ny.gov.  I agree that no interest or

penalty will be assessed or demanded by me or on my behalf

against the OAG for any delay in payment pursuant to the terms and

conditions of the settlement in the above-captioned litigation prior

to OAG's receipt of any and all necessary documentation from me

issued by Medicare (including but not limited to Medicare's Final

Demand letter or equivalent correspondence).  In accordance with

Medicare's Final Demand letter or its equivalent correspondence, I

consent to the payment of that sum directly from the total proceeds

of the above-captioned litigation.

**FUTURE MEDICARE ELIGIBILITY**

*🖉 Initial and affirm applicable future Medicare eligibility status 🖉*

2.    As of the date of this affidavit:

a.      🖉_____      I do not expect to be a Medicare recipient within 30 months

of the date of this affidavit and the date of the settlement of the above-

captioned litigation.  I affirm that I:

    i.      I have not applied for social security disability (SSDI);

    ii.      have not been denied SSDI and anticipating appealing that decision;

    iii.      am not in the process of appealing or re-filing for SSDI;

    iv.      am not 62.5 years or older; and

    v.      do not have End Stage Renal Disease (a qualifying condition for

    Medicare);

**OR**

b.      🖉_____      I am not current a Medicare beneficiary.  However, I

anticipate that I will be Medicare eligible within 30 months of the date of

this affidavit and the date of the settlement of the above-captioned litigation

and

    i.      🖉_____      I do not require any future treatment for injuries that

    are the subject of this personal injury action.  The required

    certification(s) for the injuries alleged in the complaint is attached.

    The attached certification attests that there is no anticipated future

    treatment required for the injuries sustained in the within personal

    injury action; or

ii.  ✎_____   I do require future treatment for the injuries that are the subject of this personal injury action.  In accordance with the attached Medicare Set-Aside Trust ("MSA"), I consent to the payment of $_____, payable to $_____ from the total proceeds of the above-captioned litigation. I affirm this sum will be used for the medicals expenses relating to the injuries of this personal injury action;

**OR**

c.  ✎_____   I am currently a Medicare beneficiary and

i.  ✎_____   I do not require any future treatment for injuries that are the subject of this personal injury action.  The required certification(s) for the injuries alleged in the complaint is attached. The attached certification attests that there is no anticipated future treatment required for the injuries sustained in the within personal injury action; or

ii.  ✎_____   I do require future treatment for the injuries that are the subject of this personal injury action.  In accordance with the attached Medicare Set-Aside Trust ("MSA"), I consent to the payment of $_____, payable to $_____ from the total proceeds of the above-captioned litigation. I affirm this sum will be used for the medicals expenses relating to the injuries of this personal injury action; or

iii.  ✎_____   I have not sought treatment for the injuries alleged in this case and, as such, there are no medical expenses relating to the

28

injuries alleged herein.  Furthermore, I do not anticipate seeking medical treatment for injuries alleged in this action.  I understand and agree should I require future treatment and/or prescription medication for such injuries, I will use the requisite amount of proceeds from this agreement to pay for any medical expenses relating to such injuries.

_____

KATHLEEN ROSS

Sworn to before me this
_____ day of _____ 2018.


_____

NOTARY PUBLIC

# EXHIBIT B



**Department of Design, Construction & Management**

Robert P. Lemieux, Executive Director
555 West 57th Street – 16th Floor
New York, New York 10019

TEL: (646) 664-2624     FAX: (646) 664-2793

April 12, 2018

Mr. Michael Stabulas
The Dormitory Authority of the State of New York
One Penn Plaza, 52nd Floor
New York, N.Y. 10119

### RE: Queens College – ADA Facilities Upgrade

Dear Mr. Stabulas:

This supersedes my letter dated April 12, 2018 and modifier the title of this project.

CUNY hereby directs DASNY to set up a new project for Queens College ADA Master Plan and to transfer $1,000,000 from Senior ADA 16-17, DASNY Project #3366809999 to provide the initial funding for this project.

CUNY will manage design of the project and request 1184 approval for the design phase.

When the design of the project is complete, under the terms of the MOU between CUNY and DASNY, DASNY will provide construction management services and enter into the construction contracts for the project. The CUNY design service agreement will be advanced in accordance with the agreement between CUNY and DASNY for the administration of such projects. DASNY will obtain the New York State Division of Budget 1184 approval for construction of the project.

The cash needed to advance this project has now been included in the revised CUNY Cash Distribution Plan.

My staff is available to meet with you at your earliest convenience, and to answer any questions.

Thank you for your assistance in this matter.

Sincerely,

Robert P. Lemieux
Executive Director

c:   G. Perlman, J. Haynes, G.Mizutani, A. Vedavarz, K. Xanthakos,W. Keller, Z. Krcic,
     S. Rosenthal

INVEST IN CU NY